## WOLF STEPPACHER *vs.* GEORGE G. RENEAU.

A judgment for a less sum than the amount found by the jury in this case, would have been more in accordance with the principles of justice, but this was a question entirely for the jury to decide.

The jury having violated no rule of law in assessing the damages, the verdict will be sustained.

IN error from the circuit court of Pontotoc county; Hon. Hugh R. Miller, judge.

On the 5th day of October, 1849, George G. Reneau instituted an action of covenant against Wolf Steppacher on his warranty of a negro woman, bearing date May 28th, 1847, by which the said Steppacher warranted the said slave to be "sound, both in body and mind, and that she was a slave for life."

The declaration was in covenant to recover the damages sustained by reason of the breach of the covenants of plaintiff in error. To which plaintiff in error (defendant below) plead covenants performed, in short, by consent. And for further plea, that the said girl Delia, before and at the time of making the covenants, was not unsound and diseased in body, and was not valueless to defendant in error, (plaintiff below).

At the April Term of said court, 1850, the cause was continued by consent of parties. At the October Term, 1850, it

came up to be heard, to wit, the 23d day of October, when the jury failed to agree; and thereupon, by consent of parties, a juror was withdrawn and a mistrial agreed to, and cause continued.

At the April Term, 1851, to wit, the 24th day of April, the cause came up for trial, when the plaintiff introduced and read to the jury, as evidence, the bill of sale from defendant to him of the negro girl "Delia," which was in the words and figures following, to wit:—

"Received of G. G. Reneau six hundred and fifty dollars, in full payment for a negro girl named 'Delia,' about twenty or twenty-one years old; the title to which said negro girl I hereby warrant, as well as that she is perfectly sound, both in body and mind, and that she is a' slave for life. Given under my hand and seal, this 28th day of May, A. D., 1847.

"W. STEPPACHER, [seal.]

Witnesses, { JOHN GILLIS,
{ J. SHACKELFORD."

Plaintiff then introduced John O. Gresham, who proved, that he had the girl in his possession two or three weeks immediately preceding the purchase of her by plaintiff; thought she looked unhealthy; she was a good seamstress and house servant; thought her worth $600; was willing to have given that for her; did not want to buy her though; was afraid of her health, but to please his wife would have given $600 for her. Plaintiff then proved, by C. P. Coffin, that he was a practising physician; that he had been engaged in practice at that place for twelve years; that on the 6th of October, 1847, he was called to see the girl "Delia;" that he found her diseased; she had dropsical symptoms; thought her affected with "amenorhea;" and treated her for that disease. He had been applied to two or three months before that time to prescribe for her, and did so according to plaintiff's description of symptoms; and when he saw her he found her diseased as plaintiff had described, when he called for medicine for her; that he attended on her from that time to April, 1849, when she died; that he

visited her some half dozen of times, (as often as he thought necessary,) and once a day or two before her death; that he furnished medicine and prescribed for her during her sickness; that he did not suppose she had diseased heart until he had been attending her some time; that afterwards he believed it was diseased, from her walk, and her palpitation of heart and shortness of breath, and dropsical symptoms; *that he (assisted by Dr. Herriford) made a " post-mortem" examination of the girl;* found the heart very much diseased and enlarged, the liver enlarged and adhered to the side; found the womb diseased. That from this examination and his observation of the girl while sick, he was of the opinion she died of disease of the heart, and that it was chronic; and gave it as his opinion she was laboring under the disease at the time plaintiff bought her of defendant, and that she died of that disease; that the disease of the heart, when of long standing, was incurable; that if she was laboring under it at the time of the sale, (as he believed,) he thought her valueless; his medical bill was $25 or $30. Upon cross-examination, witness could not say positively that she was diseased at the time of sale, but believed she was; no one could tell certainly when such a disease commenced; that they were ordinarily chronic, however; that her symptoms indicated the disease of longer standing than the bill of sale; that in ordinary cases the dropsical symptoms did not appear until the disease was of two or three years standing or more, and in his opinion hers was an ordinary case; that when the heart became diseased by reason of any violence or sudden hurt, the disease developed itself in a shorter time; that in such cases, if the subject was young and properly treated, a cure might be effected; that when he spoke of young subjects, however, he spoke of those fifteen or sixteen years old and under that age, and not one as old as the subject of this controversy. He further stated, that the disease of the heart was insidious, and not easily detected; that persons not skilful would not be likely to detect it.

Plaintiff then introduced Dr. Wm. Herriford, who proved that he had practised medicine twenty years, and ten years at that place; that he had assisted Dr. Coffin in his " post-

mortem" examination of the girl "Delia." He proved the same facts in relation to her condition, that were proven by Dr. Coffin at that time; that his opinion was, that the disease of her heart was sufficient to produce death. He believed the disease to be chronic. His opinion was, that the disease existed at the time plaintiff purchased the girl; that the symptoms in her case would not ordinarily develop themselves in less than two or three years, or perhaps longer; that her disease was chronic; that he believed it an ordinary case of disease of the heart; that diseases of the heart are incurable except in very young subjects, and when produced by violence; that it is an insidious disease, not easily detected; that a subject might be laboring under the disease of the heart, and skilful physicians not be able to detect it by ordinary means. It was his opinion, that "Delia" was diseased at the time plaintiff purchased her, and that she died of that disease. Reneau admitted he had the girl on trial a week or two before he purchased.

Defendant than read as evidence the deposition of Mrs. "Elizabeth Wells," the wife of "Wm. E. Wells," the vendor with warranty of said girl, to Steppacher, defendant below; to the reading of which plaintiff objected, which objection the court overruled. Mrs. Wells proved, that she knew the negro girl "Delia" three and a half years, and that during that time she knew her to be healthy; that she was the house servant during the most of that time, and if she had been unhealthy witness would certainly have known it. On cross-examination, she says she does not know how long it was after her husband sold her before plaintiff purchased her; knows nothing of her state of health during that time, or whether her habits of life were such as to expose her to disease or not.

It was admitted by plaintiffs, that Miss Mary Jane Wells, daughter of Wm. E. Wells, and Mrs. Nancy Wells, his daughter-in-law, would state substantially the same as Mrs. Elizabeth Wells did, as above. Defendant then read the deposition of Mrs. Emeline M. Horsley, who proved that she knew the negro from 1845 to 1847, and that she appeared to be healthy.

Defendant then read the deposition of Garrett J. Burse, who

proved, that after plaintiff purchased the girl from defendant, he heard him say to defendant that she was an excellent seamstress, and he was much pleased with the bargain. Defendant told plaintiff, that if he had known her to be so valuable, he would not have let him have her so low. Plaintiff laughed, and said he would not take a thousand dollars for her. Defendant then read the deposition of Dr. D. F. Alexander, who said, that he was the family physician of Wm. E. Wells during the years 1843 to 1846, and had no recollection of ever giving medicine to a negro girl by the name of " Delia." The jury found a verdict for 'Reneau for $827, from which Steppacher prayed a writ of error.

*Herbert*, for appellant, cited and commented on *Ricks, Adm'r*, v. *Dillahuntz*, 8 Port. 138; *Stone et al.* v. *Buckner et al.*, 12 S. & M. 73–88; Chitty on Contracts, 75; *Wilson* v. *Troupe*, 2 Cow. 195; *Sumner* v. *Williams*, 8 Mass. 214; *Howland* v. *Leach*, 11 Pick. 154; *Hollingsworth* v. *Fry*, 4 Dal. 345; *Patrick* v. *Grant*, 2 Shepley, 233; *Littlefield* v. *Winslow*, 9 Maine, 394; *Davis* v. *Barny*, 2 Gill & Johns. 382; 11 Vermont, 549; 2 Kent's Con. 492; *Stamps* v. *Bush*, 7 How. 255; Chitty on Con. 458, (note); 20 Johns. 196; Wheel. Law Slav. 107, (note); 11 Wend. 584; 11 Pick. 99; 2 Marsh. 148; 11 Wend. 411; 4 How. 59; 5 Ib. 165; Ib. 495–499; Gould, Plead. 480; 2 S. & M. 17, &c.; 8 Port. 418; 3 Stew. & Port. 329; 4 Hals. 25; 1 McCord, 359; 1 Taunt. 566; 3 Starkie's R. 32; 12 S. & M. 336–341.

*Adams* and *Houston*, for appellee, cited and commented on, in reply, *Kinley* v. *Fitzpatrick*, 4 How. 59; *Anderson* v. *Burnett*, 5 Ib. 165; *Chapman* v. *Murch*, 19 Johns. 290; 2 Cow. 138; 4 Ib. 422; 8 Ib. 25; 6 S. & M. 133, &c.; 10 Johns. 485; 2 Caro. Law R. 607; 2 J. J. Marsh. 129; Com. on Cont. 116; 1 S. & M. 421; 3 How. 219; *Nye* v. *Grubbs*, 8 S. & M. 643; Fisher v. *Leach*, 10 Ib. 313; 12 Ib. 618; 13 Ib. 213; 5 How. 495; 1 S. & M. 29, &c.; 13 Ib. 405; *Etting* v. *Bank United States*, 11 Wheat. 75; Graham on N. T. 245–401; 4 How. 388; 8 Port. 428; 11 Ala. 732–739; Walk. 150.

Wallace v. Wortham.

Mr. Justice FISHER delivered the opinion of the court.

The defendant in error brought an action of covenant in the circuit court of Pontotoc county, upon a covenant entered into by the plaintiff in error, warranting a certain slave to be sound in body and mind. The jury found a verdict for the plaintiff in the action. The defendant made a motion for a new trial, which was overruled by the court, whereupon the counsel for the defendant took a bill of exceptions, setting out the evidence and the instructions of the court to the jury.

The. verdict, according to well established principles, was certainly supported by the testimony. It is true, that under the circumstances of the case, a verdict for a smaller sum would have been more in accordance with the principles of justice. But this was a question for the jury to decide, and as they violated no rule of law in assessing the plaintiff's damages, the verdict must be sustained.

The instructions asked by both parties were given to the jury. No exception appears to have been taken, either at the time, or in the motion for a new trial, to the charges. Indeed none could have been taken, as, in our opinion, the law was correctly announced by the instructions.

Judgment affirmed.